IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DAVID EBRAHIMZADEH, et al.,

    Plaintiff,

v.

SHARESTATES INVESTMENTS, LLC,

    Defendant.

CIVIL ACTION
NO. 18-1659

## OPINION

**Slomsky, J.**                                                                                                   November 20, 2018

### I. INTRODUCTION

Plaintiffs David Ebrahimzadeh, Felice Disanza, Corniche Capital, LLC, and Oakdale Capital, LLC ("Plaintiffs") bring this suit against Defendant Sharestates Investments, LLC ("Defendant"), alleging five claims: (1) slander of title, (2) breach of contract, (3) unjust enrichment, (4) violations of the Fair Credit Reporting Act ("FCRA"), and (5) violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law. (Doc. No. 1.) Presently before the Court is Defendant's Motion to Dismiss for Failure to State a Claim. (Doc. No. 3.) Plaintiffs have failed to respond to Defendant's Motion and have not requested additional time to do so. For reasons that follow, the Court will grant Defendant's Motion to Dismiss. (Doc. No. 3.)

### II. BACKGROUND

On or about June 30, 2015, Plaintiff Oakdale Suites, LLC obtained two loans from Defendant Sharestates Investments, LCC for approximately $6,100,000. As security for the loans, Plaintiffs executed two corresponding mortgages in favor of Defendant on a piece of commercial property located at 1700 Harrisburg Pike, Carlisle, Pennsylvania ("Carlisle

Property"). (Doc. No. 1 at 2, 21-22.) This land is the site of a 265-room hotel and convention center. (Id. at 21-22.) Plaintiffs David Ebrahimzadeh, Felice DiSanza, and Corniche Capital, LLC served as guarantors for the mortgages. (Id. at 21.)

Shortly thereafter, Plaintiffs started having trouble making their mortgage payments and Defendant filed an action in the Cumberland County Court of Common Pleas to collect the debt. (Id. at 22.) According to the Complaint, the parties entered into a forbearance agreement on November 15, 2016 to delay foreclosure. (Id. at 3.) Additionally, Plaintiffs attempted to pay off the mortgages by selling a three-acre subdivision of property for around $2,000,000. (Id.) From that sale, Plaintiffs netted around $1,000,000, which they used to pay part of the debt owed to Defendant. (Id.) But due to high interest rates and various fees associated with the mortgages, Plaintiffs' payment made little dent. (Id.) Consequently, Plaintiffs also sold off movable furniture, fixtures, and other equipment, which allowed them to pay Defendant an additional $100,000. (Id. at 3.) Nevertheless, Defendant initiated the proceedings to foreclose on the property. (Id.)

On June 14, 2017, Plaintiffs filed for bankruptcy in the District Court of New Jersey. The action was ultimately dismissed on July 27, 2017. (Id.) As part of the bankruptcy proceedings, Defendant hired Financial Street Financial Partners ("FSFP") to prepare an appraisal of the Carlisle Property. (Id.) Based on their investigation and analysis, FSFP valued the property at $4,410,000. (Id. at 3, 11-12.) After the bankruptcy action was dismissed, a second appraisal was conducted by Marcus & Millichap Real Estate Investment Services. The property was valued at this time at $9,500,000. (Id. at 3, 14-16.)

Plaintiffs contend that despite their efforts to make mortgage payments and cure their default, Defendant acted in bad faith at every turn. Specifically, Plaintiffs believe that Defendant

2

intentionally hired a subpar financial group to conduct the first appraisal. (Id. at 3.) The Complaint alleges the following:

> Defendants used a company with very little local experience by their own admission, and the presidenty [sic] of the Defendant even admitted the appraisal should have been closer to 6 to 7 million dollars and this meant the appraisal was severely compromised and the valuation well different from the true value, at a heavily discounted amount.

(Id.) According to Plaintiffs, Defendant was "trying to take advantage of the improper valuation to force a sale of property and to eliminate the vast equity of the property." (Id.)

On February 15, 2017, the court in the state action entered a consent judgment against Plaintiffs, finding that they owed Defendant $6,592,173.84, with an interest rate of $3,050 per day. (Id. at 22.) On September 13, 2017, Defendant purchased the Carlisle Property for $1 at a Sheriff's Sale. (Id. at 3.) Then, on October 16, 2017, Defendant filed a Petition to Fix Fair Market Value of Real Property Pursuant to 42 P.a. C.S. § 8103(a) in the pending state court action. (Id. at 20-23.) Specifically, Defendant asked the state court to judicially fix the fair market price of the Carlisle Property at $4,410,000 and enter a deficiency judgment against Plaintiffs in the amount of $2,910,842.60. (Id. at 23.) Defendant calculated this amount as follows:

| | |
|---|---:|
| Judgment Amount (dated 2/15/17) | $ 6,592,173.84 |
| Interest from 2/15/17 to 10/11/17 at $3,050.00 p.d. | $ 725,900.00 |
| Sheriff's Costs | $ 2,768.76 |
| Subtotal | $ 7,320,842.60 |
| Less FMV of Property | $ 4,410,000.00 |
| Total Deficiency Judgment | $ 2,910,842.60 |

(Id.)

According to the Complaint, Plaintiff believes that by filing the Petition in state court, Defendant "is now attempting to pursue a deficiency judgment based on . . . fabricated information . . . ." (Id. at 4.) In particular, Plaintiff contends that Defendant consistently acted in

bad faith throughout their dealings and improperly used the first appraisal value to "deflat[e] the true market value of the property for its own gain." (Id.)

### III. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009). After <u>Iqbal</u> it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; <u>see also</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Tatis v. Allied Interstate, LLC</u>, 882 F.3d 422, 426 (3d Cir. 2018) (quoting <u>Iqbal</u>, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 678).

Applying the principles of <u>Iqbal</u> and <u>Twombly</u>, the Third Circuit in <u>Santiago v. Warminster Township</u>, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

<u>Id.</u> at 130 (quoting <u>Iqbal</u>, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory

4

allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Moreover, Eastern District of Pennsylvania Local Rule 7.1(c) provides that "[u]nless the Court directs otherwise, any party opposing the motion shall serve a brief in opposition . . . within fourteen (14) days after service of the motion and supporting brief. In the absence of timely response, the motion may be granted as uncontested . . . ." E.D. Pa. Local R. 7.1(c). But a motion to dismiss under Rule 12(b)(6) should not be granted "without an analysis of the merits of the underlying complaint, notwithstanding local rules regarding the granting of unopposed motions." Ray v. Reed, 240 Fed. App'x 455, 456 (3d Cir. 2007) (citing Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991)).

IV. ANALYSIS

In the present action, Defendant advances five arguments in support of its Motion to Dismiss for Failure to State a Claim. Specifically, Defendant argues that (1) Plaintiff failed to plead a plausible slander of title claim; (2) Plaintiff failed to plead a plausible breach of contract claim; (3) Plaintiff failed to plead a plausible unjust enrichment claim; (4) Plaintiff failed to

5

plead a plausible violation of the Fair Credit Reporting Act ("FCRA"); and (5) Plaintiff failed to plead a plausible claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). (Doc. No. 3.) Plaintiffs have not filed a response and have not requested additional time to do so.

As noted above, Local Rule 7.1 allows a district court to grant a motion as uncontested. But according to the Third Circuit, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should not be granted "without an analysis of the merits of the underlying complaint." Ray, 240 Fed. App'x at 456. Consequently, the Court will address Defendant's five arguments seriatim.

### A. Plaintiffs Have Failed to Plead Facts Sufficient to State a Plausible Claim for Slander of Title Under Pennsylvania Law

In the present action, Defendant first argues that Plaintiffs have not pleaded facts sufficient to plausibly state a claim for slander of title under Pennsylvania law. (Doc. No. 3-1 at 2.) Defendant submits that Plaintiffs' claim for slander of title fails for two reasons. (Id. at 3.) First, Defendant argues that the allegations in the Complaint are merely conclusory statements that fail under Twombly and Iqbal. (Id.) Second, Defendant avers that Plaintiffs' claim fails because the alleged false statement at issue was made during litigation. (Id.) For the reasons discussed infra, the Court is persuaded by Defendant's reasoning.

"Disparagement of title, variously labeled slander of title, defamation of title, or in other contexts, slander of goods, trade libel or injurious falsehood, is the false and malicious representation of the title or quality of another's interest in goods or property." Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co., 809 A.2d 243, 246 (Pa. 2002) (quoting Triester v. 191 Tenants Ass'n, 415 A.2d 698, 701 (Pa. Super. 1979)). Under Pennsylvania law, a statement or representation gives rise to a slander of title claim where:

6

(1) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the publication is false or acts in a reckless disregard of its truth or falsity.

Maverick v. Steel Co. v. Dick Corp./Barton Malow, 54 A.3d 352, 354 (Pa. Super. 2012) (quoting Pro Golf Mfg. Inc., 809 A.2d at 246.)

In Count One, Plaintiffs contend that Defendant's use of the first appraisal value in the state court action constitutes slander of title. Specifically, Plaintiffs contend that "Defendant clearly knew using the appraisal at millions of dollars less than fair market value was false." (Doc. No. 1 at 5.) Further, they assert that "Defendant certainly intended to cause pecuniary loss, as this was a direct gain to Defendant through the deficient action" and that "Defendant knew the appraisal was incorrect but used it anyway." (Id.) These allegations are insufficient to sustain the claim of slander of title.

Under Pennsylvania law, it is well-settled that "[a]ll communications pertinent to any stage of a judicial proceeding are accorded an absolute privilege which cannot be destroyed by abuse . . . . Thus, statements by a party, a witness, counsel, or a judge cannot be the basis of a defamation action whether they occur in the pleadings or in open court." Schwartz v. OneWest Bank, FSB, No. 13-0113, 2016 WL 6037078, at *3 (E.D. Pa. Nov. 13, 2013) (quoting Binder v. Triangle Publications, Inc., 275 A.2d 53, 56 (Pa. 1971)). In Triester v. 191 Tenants Assoc., 415 A.2d 698, 702 (Pa. Super. 1979), the Pennsylvania Superior Court stressed that this absolute privilege applied to slander of title claims. The policy animating this principle is manifest:

> The reasons for the absolute privilege are well recognized. A judge must be free to administer the law without fear of consequences. This independence would be impaired were he to be in daily apprehension of defamation suits. The privilege is also extended to parties to afford freedom of access to the courts, and to counsel to enable him to best represent his client's interests. Likewise, the privilege exists

> because the courts have other internal sanctions against defamatory statements, such as perjury or contempt proceedings.

Binder, 275 A.2d at 56.

Significantly, this absolute privilege "extends not only to communications made in open court, but also encompasses pleadings and even less formal communications such as, preliminary conferences and correspondence between counsel in furtherance of the client's interest." Richmond v. McHale, 35 A.3d 779, 785 (Pa. Super. 2012) (citations omitted). Additionally, the Pennsylvania Supreme Court has explained that the "protected realm" is limited to "those communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought." Post v. Mendel, 507 A.2d 351, 355 (Pa. 1986). "Where the question of relevancy and pertinency of matters alleged in the pleadings is to be inquired into, all doubt should be resolved in favor of relevancy and pertinency." Greenberg v. Aetna Ins. Co., 235 A.2d 576, 578 (Pa. 1967).

In the instant case, Plaintiffs' own factual allegations undermine their slander of title claim. For one, they admit that Defendant made the statement at issue in "a motion . . . filed in Cumberland County, PA at docket number 2016-02309 to Fix Fair Market Value of Real Property Pursuant to 42 P.A.C.S. 8103(A)." (Doc. No. 1 at 4.) What is more, they make it clear that the use of the first appraisal value was "pertinent and material" to the relief sought in the underlying state contract action. Indeed, in its October 16, 2017 Petition, Defendant asked the state court to enter a deficiency judgment against Plaintiffs in connection with the two mortgages executed on June 30, 2015. (Id. at 23.) According to Plaintiffs, the alleged false statement was axiomatic to this Petition because Defendant "relied on the $4,410,000.00 value to create a 'deficiency' of $2,910,832.60." (Id.)

Thus, regardless of whether Plaintiffs' factual allegations meet the motion to dismiss standard set forth in Twombly and Iqbal, Defendant's use of the first appraisal value is absolutely privileged because it was communicated in a pleading during a judicial proceeding and was pertinent and material to the relief sought. See Post, 507 A.2d at 355. For that reason, the Court is persuaded that Plaintiff has failed to state a plausible claim of slander of title under Pennsylvania law and will dismiss Count One of the Complaint.

**B. Plaintiffs Have Failed to Plead Facts Sufficient to State a Plausible Claim for Breach of Contract Under Pennsylvania Law**

Second, Defendant submits that Plaintiffs have not stated a claim for breach of contract under Pennsylvania law. (Doc. No. 3-1 at 4.) Specifically, Defendant argues that the breach of contract claim fails because the Complaint offers mere formulaic recitations of the law and conclusory statements of fact. (Id.) The Court agrees.

In Count Two, Plaintiffs fail to state a claim for breach of contract because they do not plead facts sufficient to plausibly show that Defendant breached a duty imposed by a contract. Under Pennsylvania law, "a cause of action for breach of contract must be established by pleading (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. 1999). Although a plaintiff need not state every term of the contract in complete detail, every element must be specifically pleaded. Id. (citing Snaith v. Snaith, 422 A.2d 1379, 1382 (Pa. Super. 1980)).

As an initial matter, Plaintiffs successfully pled the first element of a breach of contract claim. While they did not attach the mortgage contracts to the Complaint or plead every term of the contracts with exacting detail, the Complaint states that "Plaintiffs received a first and second mortgage from the lender, Defendant Sharestates Investments, LLC for approximately

9

$6,100,000.00 on June 30, 2015." (Doc. No. 1 at 2.)  Further, the allegations in the Complaint demonstrate that the parties acted in a manner that would give rise to the inference of the existence of a contract.  For instance, Plaintiffs contend that they made some initial payments on the mortgages and that they negotiated a forbearance agreement with Defendant to attempt to delay foreclosure pursuant to the mortgages.  (Id.)  Additionally, the fact that Defendant sued on the mortgage contracts in state court proves that those contracts did indeed exist.  (See id. at 4.)

Where Plaintiffs falter is at the second element of the breach of contract claim.  They claim that "Defendant clearly had an agreement with the Plaintiffs, breached said duties imposed in the contracts and caused severe damages, as shown by the facts above."  (Id. at 6.)  Troublingly, they do not actually articulate how Defendant breached said duties.  They merely assert that Defendant "was unwilling to work with Plaintiffs in a good faith nature to try to cure the default" and that Defendant acted in "bad faith" by "refusing to properly negotiate this matter, as well as deflating the true market value of the property for its own gain." (Id. at 3-4.)

Under Pennsylvania law, there is no separate cause of action for the breach of duties of good faith and fair dealing, so any claim for breach of those duties is, in effect, a claim for breach of the underlying contract.  Angino v. BB&T, No. 1:15-CV-2015, 2016 WL 4408835, at *10 (M.D. Pa. June 7, 2016) (citing Zaloga v. Provident Life and Acc. Ins. Co. of America, 671 F. Supp. 2d 623, 630-31 (M.D. Pa. 2009).  Within the context of a borrower-lender transaction, the Supreme Court of Pennsylvania "has refused to impose a duty of good faith which would modify or defeat the legal rights of a creditor."  Heights v. Citizens National Bank, 342 A.2d 738 (1975).  Likewise:

> It seems reasonably clear from the decided cases that a lending institution does not violate a separate duty of good faith by adhering to its agreement with the borrower or by enforcing its legal and contractual rights as a creditor. The duty of good faith imposed upon contracting parties does not compel a lender to surrender

10

> rights which it has been given by statute or by the terms of its contract. Similarly, it cannot be said that a lender has violated a duty of good faith merely because it has negotiated terms of a loan which are favorable to itself. As such, a lender generally is not liable for harm caused to a borrower by refusing to advance additional funds, release collateral, or assist in obtaining additional loans from third persons.

Creeger Brick & Bldg. Supply, Inc., v. Mid State Bank & Trust Co., 560 A.2d 151, 154 (Pa. 1989). Thus, Pennsylvania law "does not entail some legal obligation on the part of the lender to unilaterally agree to undermine, modify, or defeat its own legal rights and interests under a commercial agreement." Angino, 2016 WL 4408835, at *10.

In the instant action, Plaintiffs ask the Court to find fault with Defendant's attempts to enforce the terms of the mortgage contracts and to condemn Defendant for negotiating terms which were favorable to itself. Simply put, Plaintiffs ask the Court to do precisely what Pennsylvania law forbids; that is, require that a creditor alter, modify, or renounce rights that it possesses under the terms of the contract. Although Plaintiffs did not attach the mortgage contracts to the Complaint, it is reasonable to infer that the terms of those contracts required Plaintiffs to timely pay their debt and afforded Defendant the right to collect that debt. The fact that the state court entered a consent judgment against Plaintiffs in the amount of $6,592,173.84 lends credence to that inference. Thus, finding fault with Defendant's attempts to enforce its legal and contractual rights as a creditor would be tantamount to stripping all legal significance from the mortgage contracts. And that the Court will not do.

Accordingly, even viewing the factual allegations in the light most favorable to Plaintiffs, the Complaint fails to sufficiently plead facts to state a plausible breach of contract claim under Pennsylvania law. Consequently, the Court will dismiss Count Two of the Complaint.

### C. Plaintiffs Have Failed to Plead Facts Sufficient to State a Plausible Claim for Unjust Enrichment Under Pennsylvania Law

Third, Defendant argues that Plaintiffs fail to state a claim of unjust enrichment under Pennsylvania law. Once again, Defendant submits that the allegations in the Complaint are "mere formulaic and conclusory statements that do not comport with the requirement of Iqbal, supra." (Doc. No. 3-1 at 5.) Additionally, Defendant asserts that the unjust enrichment claim fails because (1) Defendant has not been unjustly enriched, and (2) the parties' relationship was founded on express, written contracts. (Id.)

"An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law." Sevast v. Kakouras, 915 A.2d 1147, 1153 n.7 (Pa. 2007). "A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another." AmeriPro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa. Super. 2001). To recover restitution under the doctrine of unjust enrichment under Pennsylvania law, a plaintiff must establish (1) an enrichment and (2) an injustice that would result if recovery for the enrichment is denied. Visor Builders, Inc. v. Devon E. Tranter, Inc., 470 F. Supp. 911, 924 (M.D. Pa. 1978) (citing Meehan v. Cheltenham Township, 189 A.2d 593 (1963)).

In Count Three, Plaintiffs allege the following in support of their unjust enrichment claim:

> There is no question here that by using a grossly reduced appraisal, and by adding in substantial unwarranted fees, Defendant was severely unjustly enriched by not only taking the property from Plaintiffs, but also having failed at any attempts to sell the property at an arm's length transaction, and as such, mitigate any alleged losses, instead Defendant is attempting to pursue millions of dollars of a manufactured deficiency judgment.

(Doc. No. 1 at 7.) But here, Defendant was not unjustly enriched. On the contrary, Defendant

foreclosed on the Carlisle Property and sought a deficiency judgment in Pennsylvania state court because Plaintiffs failed to perform under the terms of the mortgage and loan documents. There exists no unjust enrichment where a party sues to collect what it is legally and contractually owed.

Moreover, the doctrine of unjust enrichment is clearly "inapplicable when the relationship between the parties is founded on a written agreement or express contract." Benefit Trust Life Ins. Co. v. Union Nat'l Bank, 776 F.2d 1174, 1177 (3d Cir. 1985 (quoting Schott v. Westinghouse Elec. Corp., 259 A.2d 443, 448 (1969)). Thus, dismissal of an unjust enrichment claim at the motion to dismiss stage is proper where "the relationship between the parties is founded on a written instrument." Harold ex. rel. Harold v. McGann, 406 F. Supp. 2d 562, 579 (E.D. Pa. 2005).

Here, the Complaint makes clear that Plaintiffs' claim for relief is based on the express provisions of the written mortgage contracts. Based on the authorities cited above, the existence of the mortgage contracts between the parties is fatal to Plaintiffs' claim for unjust enrichment. As a result, the Court is persuaded that Plaintiffs have failed to plead facts sufficient to state a plausible claim for unjust enrichment under Pennsylvania law and will dismiss Count Three of the Complaint.

### D. Plaintiffs Have Failed to Plead Facts Sufficient to State a Plausible Claim Under the Fair Credit Reporting Act

Next, Defendant submits that Plaintiffs' claim under the Fair Credit Reporting Act ("FCRA") should be dismissed for failure to state a claim. In particular, Defendant argues that the Complaint is completely void of any allegations that would even suggest that Defendant has violated the FCRA. (Doc. No. 3-1 at 6.) Further, Defendant asserts that the FCRA claim fails

because Defendant "clearly does not meet the definition of a 'consumer reporting agency' regulated by the statute." (Id.) For the reasons stated below, the Court agrees.

In Count Four, Plaintiffs contend that they "have standing to bring a FCRA claim against Defendant in this matter" and that "Defendant committed numerous violations of the FCRA as discussed above." (Doc. No. 1 at 7.) They do not invoke any particular provisions of the FCRA or provide any kind of guidance as to how Defendant allegedly violated this statute.

Congress enacted the FCRA to ensure "fair and accurate credit reporting." § 1681(a)(1). To that end, the FCRA regulates the creation and use of consumer reports by "consumer reporting agencies" for specified purposes, including credit transactions, insurance, licensing, consumer-initiated business transactions, and employment. See §§ 1681a(d)(1)(A)-(C); § 1681b. Section 1681a(f) provides that:

> The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

§ 1681a(f). Among other things, the FCRA requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports, § 1681e(b); to notify providers and users of consumer information of their responsibilities under the FCRA, § 1681e(d); and to limit the circumstances in which such agencies provide consumer reports "for employment purposes, § 1681b(b)(1). See Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1545 (2016).

As an initial matter, the Complaint provides no guidance as to which FCRA provisions Defendant allegedly violated. Plaintiffs merely contend that Defendant committed "numerous violations" and direct the Court to the allegations in the Complaint. (Doc. No. 1 at 7.) But

having reviewed Plaintiffs' factual allegations, the Court cannot determine which provisions were supposedly violated and how Defendant's actions constituted violations.

More significantly, the FCRA claim fails because Plaintiffs do not plead any facts to establish that Defendant is a consumer reporting agency as defined in § 1681. As noted above, the FCRA applies to companies that "regularly disseminate information bearing on an individual's 'credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living.'" Spokeo, 136 S.Ct. at 1545 (quoting § 1681a(d)(1)). Here, Plaintiffs do not plead a single factual allegation that suggests that Defendant or its actions are governed by the FCRA. The Complaint only alleges that Defendant is some type of financial entity that operates as a mortgage lender. (See Doc. No. 1 at 2.) It does not contain any allegation that Defendant "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." See § 1681a(f). For these reasons, Plaintiffs have failed to state a claim under the FCRA and Count Four of the Complaint will be dismissed.

### E. Plaintiffs Have Failed to Plead Facts Sufficient to State a Plausible Claim for Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law

Finally, Defendant asks the Court to dismiss Plaintiffs' claim for violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). In particular, Defendant submits that Plaintiffs fail to state a claim under the UTPCPL because the loans at issue were commercial and not subject to the UTPCPL. (Doc. No. 3-1.)

In Count Five, Plaintiffs allege that Defendant violated the UTPCPL "[b]y using an artificially deflated appraisal, adding in substantial unearned fees and costs in order to create a substantially overinflated deficiency judgment and the perusing [sic] said judgment after all

parties have come to a consensus to resolve the issue." (Doc. No. 1 at 8.) Further, the Complaint states that "[t]he actions of Defendant was [sic] performed in direct contradiction to their promises of superior services and conduct, but instead for their own financial self-interests, in detriment to the rights and position of the Plaintiffs as well as in direct violation of the contract all parties had agreed to." (Id.)

Pennsylvania's UTPCPL "is designed to protect the public from fraud and deceptive business practices." Gardner v. State Farm & Cas. Co., 544 F.3d 553, 564 (3d Cir. 2008.) "The UTPCPL regulates an array of practices which might be analogized to passing off, misappropriation, trademark infringement, disparagement, false advertising, fraud, breach of contract, and breach of warranty." Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 497-98 (3d Cir. 2013) (quoting Ash v. Cont'l Ins. Co., 932 A.2d 877, 881 (Pa. 2007). The statute prohibits twenty specific trade practices and includes a catch-all provision that provides a right of action against a person "[e]ngaging in other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." See 73 Pa. Stat. Ann. § 201-2(4)(i)-(xx); § 201-2(4)(xxi).

Although the UTPCPL should be liberally construed to effectuate its objective of protecting consumers in Pennsylvania, the statute only applies to a specific type of transaction. Benner v. Bank of America, N.A., 917 F. Supp. 2d 338, 358 (E.D. Pa. 2013). Indeed, Section 201-9.2(a) provides the following:

> Any person who purchases or leases goods or services primarily for <u>personal, family or household purposes</u> and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 Pa. Stat. Ann. § 201-9.2(a) (emphasis added). Essentially, a private right of action exists only for consumers' personal, family, or household transactions, and not business-related or commercial transactions. See Zerpol Corp. v. DMP Corp., 561 F. Supp. 404, 414 (E.D. Pa. 1983).

Here, Plaintiffs' claim against Defendant under the UTPCPL fails because it is based on mortgage contracts that are commercial in nature. As noted above, on June 30, 2015, Plaintiffs executed two mortgages in favor of Defendant as security for the loans totaling $6,100,000. (Doc. No. 1 at 2.) According to the exhibits attached to the Complaint, the mortgages were executed on 33 acres of commercially zoned land at 1700 Harrisburg Pike, Carlisle, PA which was the site of a 265-room motel and convention center. (Id. at 11-12, 14, 21-22.) Clearly, this was a commercial transaction and Plaintiffs did not enter into these mortgage contracts for "personal, family or household purposes." As a result, Plaintiffs cannot proceed under Pennsylvania's UTPCPL and the Court will dismiss Count Five of the Complaint as well.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Failure to State a Claim (Doc. No. 3) will be granted in its entirety. An appropriate Order follows.